UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE No. 25-cv-22216

LA LEY CON JOHN H. RUIZ, P.A. d/b/a
MSP RECOVERY LAW FIRM, MSP
RECOVERY, INC., MSP RECOVERY, LLC,
MSP RECOVERY SERVICES, LLC, MSPA
CLAIMS 1, LLC, MAO-MSO RECOVERY II,
LLC, SERIES PMPI, a designated series of
MAO-MSO RECOVERY II, LLC, MSP
RECOVERY CLAIMS, SERIES LLC, and
MAO-MSO RECOVERY, LLC,

    *Plaintiffs*,

v.

PENDLEY, BAUDIN & COFFIN, L.L.P.,
COFFIN LAW FIRM, LLC, CHRISTOPHER
L. COFFIN, individually, BOIES SCHILLER
FLEXNER L.L.P, and SASHI C. BACH,
Individually,

    *Defendants*.
_____/

**COFFIN DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

"The removal process was created by Congress to protect defendants." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005). Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *McKinney v. Bd. of Trs. of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992). As the Supreme Court explained over a century ago: "the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).

1

This case proves the point. Pendley, Baudin & Coffin ("PBC") and Coffin Law Firm ("CLF") (together with Christoper Coffin, the "Coffin Defendants" or "Coffin Parties") have a long-running dispute with Plaintiffs (collectively, the "MSP Parties"). Coffin Declaration ("Dec.") ¶ 3. Before rushing to court, the parties attempted—for years—to resolve that dispute. *Id*. Unfortunately, those efforts broke down. That happens. And when it does, diverse parties may seek relief in federal court, and if they do not, the defendants are entitled to remove the case to federal court.

Here, Plaintiffs rushed to state court, and conjured a claim against the Coffin Defendants' counsel, Boies Schiller Flexner LLP ("BSF") and BSF Partner, Sashi Bach ("Bach") (collectively, the "BSF Defendants") to defeat diversity. That effort should not be countenanced. This is a dispute between diverse parties: the MSP Parties on the one hand, and the Coffin Parties on the other hand. *See* DE1.

The BSF Defendants' only role in this dispute has been to serve as outside counsel to the Coffin Defendants, acting properly to protect their clients' legal rights—as lawyers should when their client is in a bona fide, good-faith dispute with another party. Dec. ¶ 3. The MSP Parties have no claim for injunction against the BSF Defendants—the only claim they superficially brought against the BSF Defendants—nor any other possible claim. *See* DE1-3 ¶¶ 45–55. The MSP Parties' allegation that the BSF Defendants disclosed confidential information is conclusively disproven by the NDA attached to their Complaint—it does not apply to that information. Nor could any other claim lie against the BSF Defendants. While the MSP Parties allege that the Coffin Parties' claims, advanced by the BSF Defendants, were "meritless," this does not make it so: Indeed, the very documents the MSP Parties reference in their Complaint, and their own actions, conclusively

demonstrate that the Coffin Defendants had a good faith basis for their claims. No possible claim could lie against the BSF Defendants.

This case should remain in federal court.

## **BACKGROUND**

Plaintiffs are related entities that primarily seek to purchase, pursue, and monetize claims under the Medicare Secondary Payer Act.

Around 2017, PBC began serving as co-counsel with La Ley Con John H. Ruiz d/b/a MSP Recovery Law Firm ("MSP Law Firm") on behalf of certain of the MSP Parties. The terms of PBC's representation and contingent compensation were formalized in Joint Law Firm Agreements between MSP Law Firm and PBC. *See* Dec. ¶ 5.

Separately, in January 2018, CLF entered a joint venture agreement (the "JV Agreement") with MSP Law Firm and John Ruiz, which was distinct from PBC's Joint Law Firm Agreements. The JV Agreement provided certain compensation and rights to CLF, flowing from MSP Law Firm. *Id*. ¶ 6. The parties executed a minor amendment in December 2018 (the "JV Amendment"), to provide additional compensation to CLF. *Id*. The JV Agreement remains in force today: it states that it cannot be terminated except by the mutual consent of the parties, and no mutual termination has occurred. *Id*.

The MSP Parties' Complaint lumps together PBC's Joint Law Firm Agreements and CLF's JV Agreement, but these are entirely separate agreements between different parties and provide distinct rights. The **Joint Law Firm Agreements** are between PBC, MSP Law, other co-counsel firms, and certain of the MSP Parties, and provide for PBC's co-counsel representation in certain MSP cases, with contingent compensation. *Id*. ¶ 5. The **JV Agreement** establishes a joint venture

3

between CLF, on the one hand, and MSP Law and John Ruiz, on the other hand, and provides for separate rights and compensation to CLF alone, flowing from MSP Law Firm. *Id*. ¶ 6.

On May 15, 2018, MSP Law Firm and PBC entered a one-year NDA. *See* DE 1-3 at 22–27. It did not cover the JV Agreement or Amendment. The NDA narrowly defined "confidential information" as including *only* MSP Parties' information provided **after** entry of the NDA and **clearly labeled or designated as confidential**. The NDA did not reference the JV Agreement, and neither the JV Agreement nor its Amendment were labeled as confidential. Regardless of what the NDA once protected, it expired in 2019. *Id*. at 26.

In 2022, MSP Recovery, LLC and its related and affiliated entities terminated PBC as their counsel, and terminated all agreements with PBC. Regardless of the merits of that termination (the Coffin Defendants have always contended it was wrongful), the MSP entities recognized their ongoing obligation to pay PBC for its services. Dec. ¶ 7. In the termination letter, MSP's general counsel committed: "**We will comply with Florida law with respect to any fees due to PBC upon the successful completion of the cases subject to your agreement(s).**" *Id*. Under Florida law, PBC's fee had to be determined, at a minimum, in accordance with all relevant factors set forth in *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 369 (Fla. 1995). PBC trusted this representation.

Following the termination of PBC, MSP Law Firm also continued to recognize its ongoing obligation to pay CLF under the JV Agreement. In 2023 and 2024, well after PBC's termination, MSP Law Firm made payments that MSP expressly stated were payments under the JV Agreement. Dec. ¶ 10. This confirmed that MSP Law Firm understood it remained obligated under the JV Agreement, even after PBC's termination. *Id*.

In 2024, the MSP Parties announced a settlement. *See LifeWallet Announces a $2 Million Pharmaceutical Litigation Settlement* (Nov. 21, 2024), *available at* https://tinyurl.com/ddytaz98. Dec. ¶ 11. Shortly thereafter, the Coffin Parties learned that Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg"), successor counsel to PBC, planned to distribute settlement proceeds to counsel, and only a small amount was earmarked for PBC, and none for CLF. Id. ¶ 12. Yet MSP Law Firm would not explain to the Coffin Defendants what cases the funds came from, how that amount (which was far less than provided for in either PBC's or CLF's agreements) was determined, or permit Milberg to hold the fees pending resolution of the Coffin Defendants' claims. *Id*. ¶ 12.

Therefore, the Coffin Parties turned to their outside lawyers. *Id*. ¶ 13. In November and December 2024, the BSF Defendants sent two letters to Milberg on behalf of the Coffin Defendants. *Id*. ¶¶ 14-15. The letters asserted both PBC's right to a share of the attorneys' fees from the settlement funds under the Joint Law Firm Agreements, and CLF's separate right to a share of MSP Law Firm's earnings under the JV Agreement. *Id*. They further advised that Milberg should not disburse such funds without paying the Coffin Defendants what they were owed. *Id*.

Further, in late April 2025, CLF learned from corporate filings that there was "substantial doubt about" MSP Recovery, Inc.'s "ability to continue as a going concern." *See* MSP Recovery, Inc. Form 10-K (Apr. 16, 2025); Dec. ¶¶ 16-17. In that state, and to finance the company's ongoing operations, MSP Recovery, Inc. proposed entering into an agreement with Hazel Partners Holdings, LLC (among others), which would provide funding in exchange for the creation of a new entity that would control ongoing claims litigation. *See* MSP Recovery, Inc. Form 8-K (Apr. 10, 2025). Dec. ¶ 17.

The Complaint asserts that the transaction "has nothing to do with the attorneys' fees that the Coffin Defendants claim they are owed." But in fact, the Coffin Defendants' efforts to obtain assurance from MSP Law Firm that its rights under the JV Agreement were not being encumbered by this arrangement all failed. *Id*. ¶ 18. It was only then that CLF, through the BSF Defendants, wrote to Hazel to provide notice of its rights under the JV Agreement. *Id*. CLF was clear about its position. It did not claim to know that the Hazel deal would encumber its rights and thus told Hazel that it was providing notice because "the exact structure of the deal is not clear." *Id*. It then explained its rights under the JV Agreement. *Id*. The letters also made clear that the MSP Parties "disputed Coffin's right to payment []." *Id*.

At the same time that the BSF Defendants sent the letter to Hazel, the Coffin Parties also made it clear to MSP Law that they would be left with no choice but to litigate if their respective rights under the JV Agreement and Joint Law Firm Agreements were overlooked. *Id*. ¶ 19.

The MSP Parties then hastily brought this suit in state court, making claims for injunctive and declaratory relief, tortious interference, and breach of contract. The BSF Defendants are named only in Count I, which asks the Court to enjoin the Coffin Defendants and the BSF Defendants from "disclosing Confidential Information," as defined in the long-defunct NDA, "to any non-public entity or person not employed by MSP Law Firm." DE1-3 at 16.

## **ARGUMENT**

The Court appears to agree that the lone claim currently asserted against the BSF Defendants cannot succeed because it does not exist. *See* DE8 at 3–4. That said, the Court has asked whether Plaintiffs could "possibly" state a claim based on disclosure of "confidential

business information" or "interfere[nce] with Plaintiffs' financial and business relationships." They could not.

### 1. The Complaint as pleaded cannot state a claim against the BSF Defendants, and that is all that is required for jurisdiction.

As stated in the Order to Show Cause, DE8, the Coffin Defendants have the burden of establishing that "there is no possibility the plaintiff can establish a cause of action against" the BSF Defendants.[1] That showing "must be based upon the plaintiff's pleadings **at the time of removal**, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg*, 428 F.3d at 1322 (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)); *see Burstyn v. Pub. Storage*, No. 13-23939-CIV, 2013 WL 12126312, at *4 (S.D. Fla. Dec. 16, 2013) (Altonaga, C.J.) ("the Court is permitted to consider affidavits, deposition transcripts, or some other competing information") (citation omitted). That rule highlights two key points.

*First*, a plaintiff fighting removal is limited to the facts alleged in the complaint. The fraudulent joinder inquiry "is made on the basis of the circumstances alleged in the complaint . . . not on any set of facts and circumstances that a Plaintiff may be able to conjure up in a future amended pleading." *Korman v. Berkshire Life Ins. Co. of Am.*, 615 F. Supp. 3d 1315, 1322 (S.D. Fla. 2022). "[P]leadings," in other words, "are not inconsequential documents" and what matters for removal is whether the removed complaint possibly states a claim. *See In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d 272, 284 (S.D.N.Y. 2001).

To be sure, sometimes a removing *defendant* can attach affidavits to contest the plaintiff's alleged facts. *E.g.*, *Pacheco de Perez*, 139 F.3d at 1380. But the inclusion of affidavits does not turn a removal challenge into a free-for-all. In all events, the remand analysis must be based on

---

[1] The Coffin Defendants removed under the first prong, and do not assert that the MSP Defendants fraudulently asserted jurisdictional facts (*i.e.*, the BSF Defendants are resident in Florida).

"the circumstances alleged in the complaint" at the time of removal. *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007). Affidavits can be used to conclusively prove that the plaintiff's allegations are false. *See e.g.*, *Legg*, 428 F.3d at 1322–23. And, of course, the plaintiff can use those affidavits to substantiate the allegations in the complaint. *E.g.*, *Crowe v. Coleman*, 113 F.3d 1536, 1541–42 (11th Cir. 1997). But affidavits cannot be used to vary the allegations in the complaint: the inquiry is always whether the removed complaint could possibly give rise to liability. *See Fontainebleau Gardens Condo. Ass'n, Inc. v. Pac. Ins. Co.*, 768 F. Supp. 2d 1271, 1275 (S.D. Fla. 2011) (Altonaga, C.J.) (recognizing that removal must be based on the "circumstances alleged in the complaint" (quoting *Florence*, 484 F.3d at 1299)).

Thus, a defendant "need not negate any possible theory that [the plaintiff] might allege in the future: only [the plaintiff's] present allegations count." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992). It could be no other way. If a plaintiff could avoid removal by having a metaphysically possible claim against a forum defendant, then a plaintiff "could defeat diversity jurisdiction by joining his grandmother as a defendant—surely some set of facts might make her liable." *Id.* (emphasis omitted); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993) ("[I]n determining diversity the mere assertion of metaphysical doubt as to the material facts is insufficient to create an issue if there is no basis for those facts." (quotation omitted)).

All that is consistent with the cases cited in the show cause order. DE8. *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993) is clear that removability must be measured "according to the plaintiff's pleading at the time of the petition for removal." *Id.* at 1440 (quoting *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). And *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329 (11th Cir. 2011) examined the removed complaint—not a

hypothetical complaint—to determine that the "allegations" supported a claim for failure "to procure adequate insurance coverage," under Georgia law. *Id*. at 1334.

*Second*, because "a Plaintiff's pleading at the time of removal controls a fraudulent joinder analysis," *In re Zantac (Ranitidine) Products Liab. Litig.*, No. 20-MD-2924, 2022 WL 708589, at *7 (S.D. Fla. Jan. 28, 2022), a plaintiff "cannot defeat fraudulent joinder on the basis of an unpleaded claim." *Windy City Limousine Co., LLC v. Cincinnati Fin. Corp.*, No. 20-CV-04901, 2021 WL 4806384, at *4 (N.D. Ill. Oct. 14, 2021), *aff'd*, No. 21-3296 WL 1965903 (7th Cir. June 6, 2022); *see also Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) ("[T]he Cavallinis did not cite, nor have we found, any case in which such evidence has been considered to determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint."); *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) ("Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant.").

*Illoominate Media, Inc. v. CAIR Florida, Inc.*, 841 F. App'x 132 (11th Cir. 2020) is illustrative. There, the plaintiffs brought claims asserting that CAIR Florida conspired to have them removed from Twitter. *Id*. at 134. In affirming a fraudulent joinder holding, the Eleventh Circuit framed the inquiry as: "whether there was any possibility that the plaintiffs could prove a cause of action against CAIR-Florida for conspiring to ban [the plaintiff's] account." *Id.* at 135. That is, the Eleventh Circuit focused on the claims alleged in the complaint. And it did so even though the plaintiffs could potentially have pleaded other claims under state law. After all, the complaint alleged that CAIR-Florida had prevented the plaintiff from entering a courthouse. *Id.* Stopping a person from entering a building could be tortious. *E.g.*, RESTATEMENT (SECOND) OF TORTS § 21 (1965) (blocking access to a building could be an assault if it was accomplished by an offensive

9

touching or the threat of such offensive touching). But the Circuit Court never asked whether the unrelated allegations could have supported some unpleaded cause of action; it confined itself to the asserted claims. *Illoominate Media*, 841 F. App'x at 135; *see also Ironworks Unlimited v. Purvis*, 798 F. Supp. 1261, 1266 (S.D. Miss. 1992) ("[T]he Court must resolve removal and remand issues by resort only to the claims that existed in the Complaint at the time that the action was removed from state court.").

\* \* \*

Applying those two rules makes this a straightforward case. The Complaint asserts a single count against the BSF Defendants. That count cannot state a claim because it does not exist. *See* DE8 at 3–4. And the Complaint clearly excludes the BSF Defendants from every other count. *See* DE1-3 ¶¶ 56–74. The Court need not speculate as to what other claims or facts might be alleged: What matters is the removed pleading. *See Coker*, 709 F.2d at 1440. Here, that pleading cannot state a claim against the BSF Defendants. *See In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d at 284 (noting that "Federal courts across the nation . . . deny remand based on inadequate pleadings and . . . disregard allegations not contained in the original complaint"); *Berber v. Wells Fargo Bank, N.A.*, No. 16-24918-CIV, 2018 WL 10436232, at \*4 (S.D. Fla. May 2, 2018), *report and recommendation adopted*, No. 16-24918-CIV, 2018 WL 10436233 (S.D. Fla. May 9, 2018) ("[A] plaintiff, after a determination that a defendant has been fraudulently joined, cannot later correct the pleading's deficiency at the time of removal.").

> **2. Even if the Court considers unpleaded claims and facts, joinder of the BSF Defendants was fraudulent.**
>
> > *i. Plaintiffs cannot state a claim against the BSF Defendants based on the disclosure of confidential business information.*

Even if the Court examines claims beyond the pleading, Plaintiffs could never state a claim against the BSF for the disclosure of confidential information.

       a. *The MSP Parties have no contracts with BSF Defendants.*

 To start, the MSP Parties cannot bring contract claims against the BSF Defendants because they have no contracts with the BSF Defendants. It should be "obvious" that the BSF Defendants "shouldn't be" parties to a "breach-of-contract case" where they are not a party to the contract. *See Verbal v. TIVA Healthcare, Inc.*, 628 F. Supp. 3d 1222, 1226 (S.D. Fla. 2022). That rule applies fully to agents: "an agent acting within the course and scope of its agency relationship with a disclosed principal is not liable for the debts or obligations of the principal." *Sussman v. First Fin. Title Co. of Fla.*, 793 So. 2d 1066, 1068 (Fla. 4th DCA 2001). Or put more simply, an "agent … is not a proper party in [a] breach of contract claim because it is not a party to the contract." *VIP Universal Med. Ins. Grp., Ltd. v. BF&M Life Ins. Co., Ltd.*, No. 17-24633-CIV, 2018 WL 8368588, at *2 (S.D. Fla. July 18, 2018); *see Aero Techs., LLC v. Lockton Cos. Int'l., Ltd.*, No. 09-20610-CIV, 2011 WL 7657475, at *3 (S.D. Fla. Apr. 25, 2011), *aff'd*, 467 F. App'x 824 (11th Cir. 2012); *White-Wilson Med. Ctr. v. Dayta Consultants, Inc.*, 486 So. 2d 659, 661 (Fla. 1st DCA 1986).

 Here, the Complaint alleges only that the BSF Defendants acted as Coffin Law Firm's agents. *See* DE1-3 ¶ 53. That assertion cannot support a breach of contract claim against them. *E.g.*, *Richard Bertram, Inc. v. Sterling Bank & Tr.*, 820 So. 2d 963, 965 (Fla. 4th DCA 2002) ("It is well settled that an attorney serves as an agent for his or her client. As such, the attorney's acts are the acts of the principal, the client, and absent an express agreement, an agent working on behalf of a disclosed principal is not personally liable for the debts of the principal.").

       b. *The BSF Defendants did not wrongfully share any confidential information.*

 Even leaving the world of contract, the MSP Parties could not allege a confidential-information claim against the BSF Defendants because the BSF Defendants have never wrongfully shared the MSP Parties' confidential information. The MSP Parties allege only two possibilities:

the BSF Defendants' letters to Milberg and to Hazel, each on behalf of the Coffin Parties. *See* DE1-3 ¶¶ 32, 36–39. Neither shared confidential information.

Starting with the letter to Milberg, Plaintiffs could raise no viable claim because Plaintiffs (through their Chief Legal Officer) unequivocally authorized Coffin via email on January 21, 2022 to share all PBC and CLF agreements with the MSP entities with Milberg.[2] Dec. ¶ 9. His confirmation eliminates all possibility of a tort for sharing confidential information. *See e.g.*, Restatement (Second) of Torts § 892A (1979); *Charles v. State Dept. of Child. & Families Dist. Nine*, 914 So. 2d 1, 3 (Fla. 4th DCA 2005) (consent is a complete defense).

Nor can the BSF Defendants' letters to Hazel on behalf of their clients have violated a non-disclosure obligation. Those letters disclose the JV Agreement and its Amendment. Neither is confidential. The word "confidential" does not appear in either document, and they do not contain confidential information. The MSP Parties do not allege otherwise. The Complaint does not identify any confidential business information in either agreement. Instead, it contends that the JV Agreement and its Amendment are confidential under wholly separate one-year NDA between MSP Law and PBC entered into in 2018. For three reasons, they are not.

*First*, neither the JV Agreement nor its Amendment are confidential under the terms of the NDA. The NDA defines "confidential information" as information "that is disclosed on or after the Effective Date." DE1-3 at 22. That alone eliminates the January 2018 JV Agreement from the definition of confidentiality. The NDA became effective on May 15, 2018, and the JV Agreement was signed (and thus necessarily disclosed to CLF) months earlier in January 2018.

---

[2] The Court can (and indeed, must) consider affidavits submitted in support of removal. *Legg*, 428 F.3d at 1323.

The NDA also limits "confidential information" to information "of the MSP Group or its businesses or any existing or prospective customer, supplier, investor or other associated third party, or of any other person or entity that has entrusted information to the MSP Group in confidence." *Id*. at 23. Neither the JV Agreement nor its Amendment are information "of the MSP Group." To the contrary, they were created jointly by both MSP Law and CLF. Dec. ¶ 6. The information is thus no more information of the MSP Group's than it is information of CLF. *See Proctor v. Hearne*, 131 So. 173, 177 (Fla. 1930) (explaining that when property is acquired for a joint venture, the property is owned by the joint venture, even if legal title is denominated elsewhere). Said otherwise, the NDA sensibly applies only to MSP's information not CLF's information or to joint information.

*Second*, the NDA expressly excludes the JV Agreement and its Amendment from coverage. Information is not confidential under the NDA if it was known to the recipient before being disclosed by MSP. DE1-3 at 23. But the JV Agreement and its Amendment were executed by CLF and MSP at around the same time—and thus not known by MSP in advance. Dec. ¶ 6. And thus, neither the JV Agreement nor its Amendment can be confidential under the NDA. Context makes that clear. The NDA requires that PBC return confidential material at any time, on written request. D.E. 1-3 at 25. It would make no sense to require PBC (and its member CLF) to return a JV Agreement to which CLF is itself a party.

*Third*, by its terms, the NDA expired in 2019. *See id*. at 26. The Complaint, however, does not allege a breach until 2025. DE1-3 ¶¶ 40–41. By that time, there was no more confidentiality obligation. *See Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 469 (S.D.N.Y. 2021) ("The NDA expired . . . and with its expiration so too did [plaintiff's] obligations under the NDA. That is the meaning of the termination of a contract."); *TNS Media Rsch., LLC v. Tivo Rsch. &*

*Analytics, Inc.*, 629 F. App'x 916, 937 (Fed. Cir. 2015) ("After a contract has expired, injunctive relief based upon that contract is moot."); *Recif Res., LLC v. Juniper Cap. Advisors, LP*, No. CV H-19-2953, 2020 WL 6748049, at *12 (S.D. Tex. Nov. 17, 2020) (granting summary judgment on contract claim based on a confidentiality agreement because defendant's conduct occurred after expiration of the agreement). Plaintiffs cannot use tort law to rewrite the contractual expiration they negotiated. *See e.g.*, *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) (rejecting a good-faith-and-fair-dealing claim where plaintiff failed to identify an express contractual provision that had been breached).

    ii.    *Plaintiffs cannot state a claim for tortious interference against the BSF Defendants.*

Even if the inquiry before the Court could included claims not currently pleaded against the BSF Defendants, Plaintiffs could not raise tortious interference claims against the BSF Defendants. *First*, the BSF Defendants' conduct was privileged. And *second*, Plaintiffs fail to allege that the BSF Defendants acted with the requisite intent.

    a.    *The BSF Letters are privileged.*

Start with privilege. An agent is entitled to rely on any of her principal's privileges. RESTATEMENT (SECOND) OF AGENCY § 346 (1958). In Florida, a defendant is privileged to interfere with a business relationship if she "has a financial interest in the business." *Babson Bros. Co. v. Allison*, 337 So. 2d 848, 850 (Fla. 1st DCA 1976). Said otherwise, "Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998).

Here, the BSF Defendants, as the Coffin Defendants' lawyers, are entitled to rely on the Coffin Defendants' privileges. Thus, the BSF Defendants' conduct is privileged if intended to

protect the Coffin Defendants' economic interest. Even the Complaint recognizes that they did. It alleges, for example that the BSF Defendants asserted the Coffin Defendants' rights to "funds under certain fee-sharing agreements" and "certain attorneys' fees." DE1-3 ¶¶ 32, 35. Of course, the MSP Parties dispute the amount of fees owed to both PBC and CLF. But even they recognize, at a minimum, that PBC is permitted to recover in quantum meruit, *see* DE1-3 at 16, 18, and their letter terminating PBC also recognized this. Similarly, for years following the termination of PBC, the MSP Parties recognized ongoing obligations to CLF under the JV Agreement—making payments on three separate occasions in 2023 and 2024. Dec. ¶ 10. Said differently, even the MSP Parties recognized that the Coffin Defendants maintain an economic right in the settlement funds. Therefore, BSF Defendants' efforts to protect that economic right was privileged. *See Johnson Enterprises of Jacksonville, Inc.*, 162 F.3d at 1321.

To be sure, the privilege applies only when proper means are used. *Babson Bros.*, 337 So. 2d at 850. But the BSF Defendants used proper means. "[A]sserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means . . . does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." RESTATEMENT (SECOND) OF TORTS § 773 (1979); *In re Standard Jury Instructions In Civil Cases-Report No. 09-01 (Reorganization of the Civil Jury Instructions)*, 35 So. 3d 666, 748 (Fla. 2010) (citing the Restatement). Put in more concrete terms:

> A enters into a contract to buy Blackacre from B. C honestly believes that he has a right of way over Blackacre. With knowledge of the contract, C in good faith informs A of his interest and threatens to enforce it by legal proceedings if, as and when the owner of Blackacre should deny his claim. A thereupon refuses to perform his contract with B. C's interference is not improper.

RESTATEMENT (SECOND) OF TORTS § 773, ill. 1 (1979).

That describes the letters to Milberg and Hazel to a T. They explained CLF's rights under the JV Agreement, and attached the Agreement to validate those claims. Dec. ¶¶ 14, 15, 18. The second Milberg letter invited Milberg either to "interplead the funds," or attend a "mediation with the funds placed in the mediator's escrow" if Milberg was "receiving demands from other parties to make a distribution." *Id*. ¶ 15. The Hazel letter expressly acknowledged that it was unclear whether the Hazel deal impacted CLF's rights ("the exact structure of the deal is not clear to us") and that there was a dispute with the MSP Parties ("[t]o be sure, MSP Law and Ruiz have disputed Coffin's right to payment []."). *Id*. ¶ 18.

That is the epitome of good faith: The BSF Defendants explained their clients' rights, neutrally explained that there was a dispute, and invited a discussion. *See Hemostemix Inc. v. Accudata Sols., Inc.*, No. CV 20-881-RGA, 2022 WL 609106, at *3–4 (D. Del. Feb. 28, 2022) (finding good faith on very similar facts); *Buschel v. MetroCorp*, 957 F. Supp. 595, 599 (E.D. Pa. 1996) (dismissing a tortious interference claim against a lawyer when "the complaint itself shows that [the lawyer] was acting to protect what he believed to be the legally protected interest of his client").

      b. *The BSF Defendants acted to protect their clients' interests.*

Privilege aside, the claims against the BSF Defendants fail because there is no allegation (much less evidence) that the BSF Defendants acted with any intent other than to protect their client's legitimate interest. "To state a claim for tortious interference with prospective economic advantage or business relationship, a plaintiff must show . . . 'an intentional and unjustified interference with the relationship by the defendant.'" *GolTV, Inc. v. Fox Sports Latin Am., Ltd.*, No. 16-24431-CIV, 2018 WL 1393790, at *21 (S.D. Fla. Jan. 26, 2018) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). That claim demands scienter: the

16

defendant's conduct must be intentional and unjustified. *Sec. Title Guarantee Corp. of Baltimore v. McDill Columbus Corp.*, 543 So. 2d 852, 855 (Fla. 2d DCA 1989). "Intent in the law of torts means that the actor acts for the purpose of causing an invasion of another's interest." *Deane v. Johnston*, 104 So. 2d 3, 8 (Fla. 1958). "Thus, even if the defendant is aware of the existing business relationship, the defendant will not be liable for tortious interference with that relationship unless there is evidence that the defendant intended to procure a breach." *Chi. Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002).

Here, that means that Plaintiffs must plead that the BSF Defendants themselves possessed the relevant state of mind. *E.g.*, RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. d (2006) (when a tort requires scienter "[a]n agent's action . . . does not constitute such a tort if the agent acts . . . without the requisite intention."). But Plaintiffs fail to plead anything of the sort: they do not allege that the BSF Defendants had any reason to harm them, that the BSF Defendants acted in bad faith, or that the BSF Defendants knew that they were asserting flawed claims or acting for an improper purpose. *See Green v. Time-Life Libraries Inc.*, 65 F. App'x 157, 158 (9th Cir. 2003) (affirming a fraudulent joinder finding when the plaintiff failed to allege any facts supporting tortious interference against a law firm).

Nor could they. The letters the BSF Defendants sent were careful to explain their reasoning and to recognize that the MSP Plaintiffs might disagree with the analysis. Dec. ¶ 15 ("To the extent Milberg is receiving demands from other parties to make a distribution, we invite Milberg to interplead the funds, so that this can be resolved."); *Id*. ¶ 18 ("To be sure, MSP Law and Ruiz have disputed Coffin's right to payment []."). The letters thus rebut any claim of bad intent: they show that although the BSF Defendants firmly asserted their clients' rights, they also protected MSP by

17

noting its position. And as Coffin explains in the attached affidavit, the letters were sent based on a good faith belief in their position, not out of an intent to harm MSP. *See* Ex. 1. *Id*. ¶¶ 4, 21–22.

And it is not just the BSF Defendants who recognized the Coffin Defendants' rights. The MSP Parties made payments pursuant to the JV Agreement in 2023 and 2024. *Id*. ¶ 10. It was only once larger settlements came in that they renounced their obligations. *Id*. ¶ 19.

## CONCLUSION

For all these reasons, the Court should hold that the BSF Defendants were fraudulently joined, and that removal was proper. The Court should thus dismiss the BSF Defendants, *see Harris v. Cellco P'ship*, 5:15-CV-529-OC-30PRL, 2016 WL 231191, at *5 (M.D. Fla. Jan. 15, 2016) (dismissing fraudulently joined defendant), and proceed with the case.

Dated: May 20, 2025                    Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: */s/ Sashi C. Bach*
Sashi C. Bach, Esq. (FBN: 398276)
Carl E. Goldfarb, Esq. (FBN: 125891)
Evan M. Ezray, Esq. (FBN: 1008228)
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022
sbach@bsfllp.com
cgoldfarb@bsfllp.com
eezray@bsfllp.com
ftleserve@bsfllp.com
*Counsel for Pendley, Baudin & Coffin, L.L.P, Coffin Law Firm, LLC, Christopher L. Coffin, individually,*

## REQUEST FOR HEARING

Defendants request oral argument on this issue. Defendants submit that argument would aid the Court's decisional process. Defendants submit that argument would take 30 minutes.

18

## **CERTIFICATE OF SERVICE**

The foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record on May 20, 2025:

By: */s/ Sashi C. Bach*
Sashi C. Bach, Esq.